UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CAROLYN GROCE** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-2270 (RMC) |
| | ) | |
| **EARL A. POWELL, III, Director,** | ) | |
| **National Gallery of Art** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Carolyn Groce works as a Security Guard at the National Gallery of Art ("Gallery"), part of the Smithsonian Institution in Washington, D.C. Her present position is graded on the General Schedule for federal employees at grade 5 ("GS-5"). She applied for promotions to GS-6 in 2001 and 2002 but was unsuccessful. She brings this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, alleging that reprisal for filing a discrimination charge interfered with her rights to a promotion. Defendant, Earl A. Powell, III, Director of the Gallery, is sued in his official capacity.[1] Director Powell has filed a motion for summary judgment to which Ms. Groce has filed four oppositions. After careful review and consideration of all of the pleadings, the Court finds that Ms. Groce cannot proceed on her claim regarding the 2001 non-selection

---

[1] Ms. Groce is before the Court *pro se*, without the benefit of counsel. She named several officials of the Gallery as defendants in her complaint; however, a Title VII suit may be brought only against the federal agency (in the name of the head of the agency), and not against individual agency officials. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). Ms. Groce does not seek individual remedies from the named officials. Accordingly, the Court will construe her complaint as being brought against Director Powell in his official capacity and will dismiss the individually-named defendants.

because she failed to exhaust her administrative remedies. The Court also finds that although Ms. Groce has presented a *prima facie* case of discrimination regarding the 2002 non-selection, she has failed to overcome the Gallery's legitimate, non-discriminatory reason for not selecting her. Accordingly, summary judgment will be entered for the Gallery.

## I. BACKGROUND

Ms. Groce has been employed by the Gallery since 1989, starting as a GS-2 and moving, in 1993, to the position of Security Guard, GS-3, in the Gallery's Office of Protective Services, Administrator's Staff ("AOP"). She was promoted to grade GS-4 in 1994 and was again promoted to grade GS-5 in 1996, her current position and grade.

### A. October 2001 Application for Promotion (VA # 01-74)

Ms. Groce applied for a GS-6 position as a Special Police Officer ("SPO") in October 2001 pursuant to Vacancy Announcement ("VA") #01-74.[2] The Gallery states that Ms. Groce was not selected because she did not attain the minimum required score on the combined written exercise, multiple choice examination, and panel interview. *See* Defendant's Statement of Undisputed Material Facts ("Def.'s Facts") ¶ 2. Ms. Groce asserts that her test scores were changed and that her "whole test shows [she] had more than enough points." Plaintiff's Opposition to

---

[2] Unlike a Security Officer, an SPO receives additional training and carries a gun. *See* Defendant's Motion for Summary Judgment ("Def.'s Mot."), Ex. U, Declaration of James L. Lucey ("Lucey Decl.") ¶ 14 ("Someone can say that we go through a lot to promote from a GS-5 to a GS-6. However, we are talking about giving someone the ultimate authority, a weapon. A GS-6 SPO is a sworn police officer with arrest authority, limited as that may be, but they have that authority. They are police officers for the Gallery. We are giving them a weapon and police authority in this building, and they have to use good judgment. Things happen here all of the time and you have to use common sense. It's a big step.").

Defendant['s] Motion for Summary Judgment and/or Dismissal [Dkt. No.14] at 1;[3] s*ee also* Pl.'s Opp. Dkt. #28 at 4 ("On November 28, 2001 plaintiff received a letter stating she was not selected because of 1 point, which was due to non-calculation of total points.").

Ms. Groce alleges that she was never properly considered for the GS-6 position advertised in VA # 01-74. She states that, on November 12, 2001, Major (then-Captain) Larry V. Kaylor passed out his own list of candidates that included all of the officers who applied for the position except for Ms. Groce. Pl.'s Opp. Dkt. # 28 at 5. Major Kaylor told Ms. Groce he did not know why her name was excluded. *Id.* On November 23, 2001, Commander Karen Perry issued a list with all of the officers who had applied under VA # 01-74, but Ms. Groce's name was omitted again. *Id.* at 6. According to Ms. Groce: "All the officers went before the board on November 23, 2001 [for interviews] [but] Plaintiff was sent before the promotional board on [November] 26, 2001. Plaintiff qualified with the other officers, why [were] the defendants treating plaintiff different [sic]." *Id.* Ms. Groce believes that "malicious things" were done to prevent her from receiving the GS-6 promotion. *Id.* at 4. She sent a letter to Director Powell on December 5, 2001, informing him of her suspicions but she received an unsatisfactory answer from Administrator Darrell Wilson and no direct response from Director Powell. *Id.* at 4-5. Ms. Groce filed an informal complaint with the Gallery's EEO Office. Nancy Vibert, an EEO Counselor, prepared a memorandum summarizing Ms.

---

[3] Ms. Groce filed Plaintiff['s] Opposition to Defendant['s] Motion for Summary Judgment and/or Dismissal on May 31, 2005, at Docket No. 14. On July 14, 2005, she filed Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at Docket No. 23. She then filed Plaintiff's Motion and Memorandum of Points and Authorities in Support of Opposition to Summary Judgment on September 2, 2005, at Docket No. 28. For clarity, these will be referred to as "Pl.'s Opp. Dkt. # __." On September 2, 2005, Ms. Groce also filed a Memorandum of Points and Authorities In Support of Plaintiff['s] Statement to Amend Material Facts in Dispute ("Pltf.'s Facts"), at Docket No. 28.

Groce's complaint and her request that the written test administered to SPO candidates be assessed by experts. In summary, Ms. Groce was:

> claiming that the written component for the selection process of a Special Police officer in the NGA Guard Force was unfairly graded. Ms. Groce believes that the written test unfairly credits certain pre-selected answers on the investigation report that she felt were insignificant to the incident, while it did not give credit for answers that she deemed critical to the case. Several of the answers that were marked wrong on the incident report were included in her essay for which she only received one point.
>
> . . .
>
> Ms. Groce has read this [memorandum] and her signature below indicates that it accurately reflects her concerns regarding the written test. She was offered the opportunity to review and edit any part of this letter.

Def.'s Mot., Ex. Z. The record does not reveal clearly what happened as a result of this memorandum, which Ms. Groce signed on February 25, 2002. *Id.*[4] Thereafter, Ms. Vibert sent a memorandum to Ms. Groce dated April 11, 2001, identifying her claim as "Written exercise for Special Police Application was unfairly graded" but specifying that the "Basis(es)" for this claim – *i.e.*, race, color, national origin, gender, age, etc. – was "None." Def.'s Mot., Ex. AA. This memorandum was a formal "NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT" and advised Ms. Groce that she was "now entitled to file a discrimination complaint." *Id.* This memorandum, which Ms. Groce signed on April 11, 2002, also invited questions about EEO filing procedures. *Id.*

---

[4] There is some suggestion that the EEO Counselor continued to attempt to mediate and that a settlement proposal was made that would have resulted in Ms. Groce's promotion. *See* Pl.'s Opp. Dkt. # 14 at 7. However, Chief Lucey refused to agree with the proposal and it was never finalized or implemented. *Id.* Because the Court finds that Ms. Groce failed to submit a true EEO formal complaint, and that, even if her informal complaint could be deemed sufficient, she failed to pursue it and exhaust her administrative remedies, the Court is unable to fault Chief Lucey for refusing to "settle" a non-viable claim.

Ms. Groce did not file a formal EEO complaint. She explains, "They said that because I had not stated a basis, they could not send it through." Def.'s Mot., Ex. E, Declaration of Carolyn Ann Groce ("Groce Decl.") ¶ 11. In other words, because Ms. Groce did not attribute the alleged improper grading of the written test to discrimination based on her race or other protected category, she was advised that the EEO Office could not further process her complaint.

### B. February 2002 Application for Promotion (VA # 02-15)

The Gallery posted VA # 02-15 in February 2002, announcing its intention to fill more SPO positions. Ms. Groce, among others, applied. The Gallery followed its SPO Application Process in filling the vacancies. *See* Def.'s Mot., Ex. P. The Personnel Office prepared a list of qualified candidates, who were interviewed by an Evaluation Panel and required to take a test. *Id.* "All candidates who receive a score of at least 70 points or who fall within the top 25% (whichever yields the greater number of eligible candidates) [are] placed on [an] interim roster to receive consideration for the Special Police Officer Training." *Id.* ¶ 7. Successful completion of the SPO Training is required for placement on the Final Roster from which the Chief of Protection Services, James J. Lucey, makes the final promotion decisions. *Id.* ¶¶ 9 - 12. If a candidate has successfully completed the SPO Training, his or her certificate remains good for four years and he or she does not need to be re-trained to be considered for promotion. *Id.* ¶ 8.

Ms. Groce was included on the Interim Roster for VA # 02-15. Def.'s Mot., Ex. S. She was notified by a letter dated April 25, 2002, that she would undergo partial SPO Training from April 29, 2002 through May 3, 2002, because she had already "successfully completed the weapons and first aid training." Def.'s Mot., Ex. T. Ms. Groce was also included on the Final Roster that was submitted to Deputy Chief Michael Prendergast on May 7, 2002. Def.'s Mot., Ex. U. However, Ms.

Groce was notified on July 1, 2002, that she had not been selected for promotion. Ms. Groce subsequently requested written reasons as to why she had been passed over and she received a July 3, 2002, letter from Chief Lucey in response. *See* Def.'s Mot., Ex. Y. In the letter, Chief Lucey explained that, during the evaluation process, Ms. Groce received a two-day suspension, which is an adverse action and therefore disqualifies her for the SPO position. *Id*. Similarly, Chief Lucey later told the EEO investigator that Ms. Groce "did not meet a minimum qualification requirement. In particular, there was an adverse action within the last 52 weeks." Lucey Decl. ¶ 9.

Ms. Groce filed an informal and then a formal EEO complaint alleging that she was not selected for the GS-6 position under VA # 02-15 on the basis of reprisal for her prior complaint. After an investigation by the Gallery, Ms. Groce sought and received a hearing before an Administrative Judge, who issued a summary judgment decision in the Gallery's favor on May 25, 2004. Def.'s Mot., Ex. CC. The Gallery adopted the Judge's decision and issued a final order on June 17, 2004, finding that Ms. Groce had not been discriminated against based on reprisal. Def.'s Mot., Ex. DD. Ms. Groce timely filed an appeal with the U.S. Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, which affirmed by a decision issued on October 13, 2004. This lawsuit followed.

### C. The Adverse Action

In early January 2004, the Gallery told the Security Officers that they would be required to work mandatory overtime on their days off and that they would be suspended if they did not work the mandatory time. Groce Decl. ¶ 84. Ms. Groce heard about this new requirement from other officers. *Id*.; *see also* Pl.'s Opp. Dkt. #28 at 5 ("Plaintiff agree[s] that she was informed by Sgt. [Alonzo] Kennedy[] that Major Kaylor said that you would be involuntary mandatory on January 3,

2002 on her assigned day off." (emphasis omitted)). Ms. Groce spoke with Major Kaylor and wrote a letter to him, explaining that she could not work on "any of her days off" because of a lack of childcare. *Id.* Nonetheless, Lt. Kathy Sutton, Ms. Groce's second-line supervisor, told her on January 17, 2002, that she was scheduled to work overtime on January 18, 2002, her scheduled day off. *See* Def.'s Mot., Ex. CC at 2. "According to [Lt.] Sutton, she ordered [Ms. Groce] not to report for this mandatory overtime work with her child., [sic] and that despite this order Complainant brought her child along." *Id.*[5] Lt. Sutton issued a proposal to suspend Ms. Groce dated March 28, 2002. She "ultimately received a two-day suspension on June 13, 2002, for insubordination, *i.e.*, for 'willful refusal to obey Lt. Sutton's order to report for mandatory overtime work without your child.'" Def.'s Mot., Ex. CC at 2. In the June 13, 2002, decision, Major Kaylor stated as justification for the two-day suspension:

> According to the proposal [to suspend], on Thursday, January 3, 2002, I relieved you from having to work mandatory overtime duty on January 4th, because you alleged that your childcare situation created a hardship making it impossible for you to work mandatory overtime work. However, I informed you that given the nature of your position and the shortage of personnel, you would inevitably be scheduled for involuntary overtime work in the near future and that you needed to make childcare arrangements for this eventuality.
>
> On Thursday, January 17, 2002, Lt. Sutton notified you that you were scheduled to work overtime on Friday, January 18, 2002, your scheduled day off. According to Lt. Sutton, she became aware that you had stated that

---

[5] Ms. Groce remembers otherwise. She states that "Lt. Sutton told plaintiff, if I was you I would bring her to work, because they are going to send you home. So I brought my daughter to work. Lt. Sutton never order[ed] plaintiff not to bring my child to work, or that I was expected to make arrangements [for childcare]." Pl.'s Opp. Dkt. #28 at 5; *but see* Groce Decl. ¶ 75 ("One time I brought my child to work because I could not find anybody to keep her. Lt. Allen told me that children were not allowed. I responded that they wanted me at work but I could not find a babysitter on my off day. I came as they asked me to. He told me that they would have to send me home.").

you would report to work with your child the next time you were assigned involuntary overtime work. As a result, she specifically ordered you to report for this mandatory overtime work <u>without</u> your child. Despite her very specific order, you reported for the overtime duty on January 18th and brought your child along. You were allowed to go home, since the Office of Protection Services clearly could not put you to work as long as you had your child with you.

Thus, you were charged with insubordination for your willful refusal to obey Lt. Sutton's order to report for mandatory overtime work without your child.

In response to this charge, you argued that I had agreed to relieve you from mandatory overtime work as long as you submitted a written statement concerning your inability to find childcare on your days off. You further argued that I reneged on this promise and that AOP was insensitive to your childcare needs on your days off. However, you also admitted that you knew that it was improper to bring your child to work.

In reviewing this case, I want to first reiterate that my request for a written note from you was in response to your initial request to be excused from the involuntary overtime assignment on January 4th. It was not intended to cover any future overtime assignment requests. Indeed, when I relieved you from the overtime assignment on January 4th, I explained to you that your name would again be called at a later date and you needed to make appropriate arrangements. While I understand your difficulties in finding proper childcare, you have had ample notice of the need to do so and that your status as an emergency employee requires that you be available to work on short notice.

My review of this charge leads me to conclude that you have admitted knowing that you could not bring your child to work. . . . Lt. Sutton gave you a specific order <u>not</u> to bring your child to work on January 18th. Thus, I find that your conduct . . . constituted insubordinate conduct.

Def.'s Mot., Ex. M at 2.

Although Ms. Groce qualified for promotion to SPO GS-6, her promotion was held up while the question of discipline for her conduct on January 18, 2002, was under consideration.

After Major Kaylor issued his decision and imposed a two-day suspension,[6] Chief Lucey denied Ms. Groce's application for promotion. Chief Lucey explained to Ms. Groce that she "no longer met the minimum qualification requirement of no adverse actions within the last 52 weeks" when candidates were selected because of Major Kaylor's June 13, 2002, decision imposing a two-day suspension. Def.'s Mot., Exh. Y at 2. Chief Lucey further stated that "under merit promotion procedures, candidates must meet all minimum qualification requirements upon application and upon selection for the position." *Id.* at 1.

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This remedy is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). To be deemed "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson*, 477 U.S. at 247-48; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

Plaintiff invokes the jurisdiction of this Court pursuant to 42 U.S.C. § 2000e-

---

[6] "Adverse Actions are removals, suspensions, reductions in grade or pay, or furloughs for 30 days or less." Def.'s Mot., Ex. CC, at 2 n.1 (citation omitted).

5(f)(3). In employment discrimination cases under Title VII – in the absence of direct evidence of discrimination – courts apply the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish by a preponderance of the evidence a *prima faci*e case of discrimination or retaliation. If successful, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Ultimately, the plaintiff must prove by a preponderance of the evidence that the employer's stated reason was merely pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

### III.  ANALYSIS

Ms. Groce cannot proceed with her claim on her non-selection in October 2001 because she did not submit, or pursue, a true EEO complaint that she was discriminated against under Title VII. The only complaint that the EEO Office accepted for processing, and with which she explicitly concurred, was that the written test that she submitted was "unfairly graded." She made no connection of that action to race, color, gender, national origin, age or other protected class. Even if this informal complaint were deemed to allege a Title VII violation, Ms. Groce did not pursue it by filing a *formal* EEO complaint, despite receiving notice of her right to do so.

A federal employee cannot file a court suit without first going through an agency's internal EEO process. *See* 42 U.S.C. § 2000e-16(c) (noting that Title VII confers a right upon a federal employee to file a civil action in federal court only after the employee has been "aggrieved by the final disposition of his [administrative] complaint, or by the failure to take final action on his complaint"); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir.

1997) ("[T]he EEOC has established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission.") (citation omitted). This exhaustion requirement is mandatory and its purpose is to "allow the agency an opportunity to resolve the matter internally and avoid unnecessarily burdening the courts." *Wilson v. Pena,* 79 F.3d 154, 165 (D.C. Cir. 1996); *Bowden*, 106 F.3d at 437 ("Complainants must timely exhaust these administrative remedies before bringing their claims to court."). Because Ms. Groce failed to file a timely, formal complaint, thereby failing to exhaust her administrative remedies, she has lost her right to pursue a discrimination claim in this Court with respect to her non-selection in October 2001.

As to her claim concerning her non-selection in July 2001, Ms. Groce clearly exhausted all administrative remedies. She has presented a *prima facie* case of discrimination.

However, the Gallery has articulated a legitimate, non-discriminatory reason for Ms. Groce's non-selection in 2002, and she admits that she has no evidence to suggest that this reason is pretextual, except that it took so long to deny her the promotion.[7] Chief Lucey explains, without contradiction, that a candidate must "meet the 52-week adverse action minimum qualification requirement through the point of selection." Lucey Decl. ¶ 9; *see also* Def.'s Mot., Ex. Y at 2 ("[A]t the time the candidates were selected, [Ms. Groce] no longer met the minimum qualification requirement of no adverse actions within the last 52 weeks.").

---

[7] *See* Groce Decl. ¶ 72 (Q. "Do you have any evidence to support your view that the two-day suspension was not the real reason for not promoting you?" A: "No. But they could not give a good enough reason why they waited so long to put us in uniform."); *see also id.* ¶ 73. (Q. "So, the manner of the retaliation consisted of management doing nothing until they could come up with something to hold against you?" A.: "Right.").

To avoid summary judgment, Ms. Groce is "required to produce some objective evidence showing defendant's proffered reasons are mere pretext." *Batson v. Powell*, 912 F. Supp. 565, 578 (D.D.C. 1996), *aff'd*, 203 F.3d 51 (D.C. Cir. 1999). She has failed in this effort. The only other similarly-situated person, James Tyndle, was treated in identical fashion. At the time of their candidacies for GS-6 SPO positions in Spring 2002, both Ms. Groce and Mr. Tyndle had pending proposed adverse actions. Both promotions were held in abeyance until the proposed actions reached final decisions. In Mr. Tyndle's case, the proposed adverse action was not upheld and he was found qualified for promotion. He received a retroactive promotion and salary adjustment. In contrast, the proposed adverse action in Ms. Groce's case was mitigated (from a five-day suspension to a two-day suspension) but was still an adverse action. Ms. Groce's changing defenses to discipline for bringing her daughter to work become irrelevant in the face of her uncontested admission that it was wrong for her to do so.

In short, Ms. Groce and Mr. Tyndle were treated identically: decisions on each were delayed pending final resolution of the proposed disciplinary actions. The reason for the delay was explained to Ms. Groce immediately and leaves no leeway for her suspicions that the delay alone demonstrates reprisal. *See* Def.'s Mot., Ex. Y. Far from being evidence of pretext, Chief Lucey's handling of the Tyndle situation confirms the non-retaliatory nature of his decision with regard to Ms. Groce. Because Ms. Groce has not put forth any evidence that calls into question the legitimacy of her non-selection, her retaliation claim must fail.

## IV.  CONCLUSION

Summary judgment will be awarded to the Gallery. Ms. Groce failed to submit a timely complaint that her non-selection in October 2001 violated Title VII and failed to exhaust

her administrative remedies with regard to the complaint she did file. She has failed to counter the Gallery's legitimate, non-discriminatory reason for her non-selection in July 2001 with any evidence of pretext. A memorializing order accompanies this memorandum opinion.[8]

　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　ROSEMARY M. COLLYER
　　　　　　　　　　　　　　　　　United States District Judge

DATE: January 20, 2006.

---

[8] Plaintiff's Motion to Stop Defendant's Harassment at Work [Dkt. No. 24] will also be denied because this Court lacks subject matter jurisdiction to provide the type of relief that Ms. Groce seeks. Plaintiff alleges that she has been harassed at work as a result of filing this lawsuit and asks this Court to provide her relief from Defendant's conduct. As Defendant correctly notes, "[t]here is no claim in this case for retaliatory harassment . . . nor could there be since Plaintiff has not even begun the process of exhausting her administrative remedies." Def.'s Opp. to Plaintiff's Motion to Stop Defendant's Harassment at Work [Dkt. No. 27] (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 102, 118 (2002)).